J-S18025-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ANDRE WARE | |
| Appellant | No. 3372 EDA 2016 |

Appeal from the PCRA Order dated October 3, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002350-2012
CP-51-CR-0012132-2011

BEFORE: PANELLA, J., SOLANO, J., and FITZGERALD, J.[*]

MEMORANDUM BY SOLANO, J.: **FILED NOVEMBER 02, 2017**

Appellant, Andre Ware, appeals *pro se* from the order dismissing his first petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. Appellant raises numerous claims of PCRA counsel's ineffectiveness. We affirm.

In a prior memorandum addressing Appellant's direct appeal, we summarized the factual background of this case:

> On April 20, 2011, Rahfee Yates ("Yates"), Shalik Fogle ("Fogle"), and Bakari Diaoume ("Diaoume") were sitting outside of a barbershop located at 1839 South Sixth Street in Philadelphia. Yates and Fogle knew one another, but neither was familiar with Diaoume. At around 1:45 p.m., two men approached the barbershop wearing [black] hoods and holding guns and began shooting Yates several times at close range. The two men also hit Diaoume with their gunfire. Diaoume was close enough to the two men to touch them. While Diaoume survived

---
[*] Former Justice specially assigned to the Superior Court.

his injuries, Yates died from the injuries that he sustained from his gunshot wounds.

Fogle escaped the incident unharmed. When police questioned him immediately after the shooting, he stated that he was unable to identify the two individuals who shot Yates and Diaoume. However, a few weeks later on April 27, 2011, police arrested Fogle on unrelated drug charges. At that time, Fogle volunteered information about Yates's murder, identifying [Appellant] as one of the individuals who shot Yates and Diaoume. On April 28, 2011, Diaoume identified [Appellant] in a photo array.

*Commonwealth v. Ware*, 102 A.2d 524 (Pa. Super.) (unpublished),

*appeal denied*, 104 A.3d 4 (Pa. 2014). Appellant was charged with the

murder of Yates.

The PCRA court explained how Appellant was apprehended:

[On June 15, 2011,] Officer Ortiz spotted [Appellant in the 1900 block of Hemberger Street in North Philadelphia] in a vehicle that matched flash information from a shooting. ["The flash information for the shooting was unrelated to the Yates murder." PCRA Ct. Op., 10/17/16, at 5 n.5.] As Officer Ortiz and his partner approached, [Appellant] and a second male exited the vehicle. After [Appellant] exited the vehicle, Officer Ortiz saw in plain view, from just fifteen to twenty feet, [Appellant] pull two firearms from his waistband and toss them over his head into a yard passageway of a home. Officer Ortiz immediately recognized the tossed objects as firearms and heard their metallic sound when they hit the concrete. It was only after [Appellant] threw the weapons that the officers attempted to secure him. [Appellant] then fought with officers and attempted to flee. Once [Appellant] was secured, the officers retrieved the firearms from the yard. Nothing in the record establishes that [Appellant] had a reasonable expectation of privacy in the yard where the officers found the firearms.

PCRA Ct. Op., 10/17/16, at 5-6 (citations omitted). Both firearms were nine

millimeter handguns. Trial Ct. Op., 6/20/13, at 5. Neither of the recovered

guns matched the ballistics evidence from the guns used in the Yates murder.

On February 12, 2013, the Commonwealth moved to consolidate Appellant's murder case with the firearms charges resulting from Appellant's June 15, 2011 arrest. The Commonwealth reasoned that consolidation was appropriate because the June 15, 2011 events established, among other things, Appellant's possession of handguns, that he "had the means to commit" murder, and Appellant's flight from South Philadelphia, where the murder occurred. Commonwealth's Mot. to Consolidate, 2/12/13, at 2, 6. At the hearing on the motion, the Commonwealth reiterated this position and emphasized that the record would establish Appellant's flight. The court granted the Commonwealth's motion over Appellant's objection. N.T., 2/19/13, at 14.

Appellant was tried before the Honorable Barbara A. McDermott and a jury. Among the witnesses at trial was Shandel Gregory, whose testimony was summarized by Judge McDermott in the PCRA proceeding as follows:

> On the day of the murder, [Appellant,] whom Gregory knew as Onnie, and another male, whom she knew as Meatball, banged on Gregory's door and entered her apartment, which was located near the subject murder. [Appellant] had a dark hoodie in his hand. Noticing that it was a nice spring day and that the two males were sweating profusely, Gregory asked if they were okay. The two males replied that they were "cool." After spending a few minutes in one of the back bedrooms, the two males returned to the front room, instructed Gregory to close and lock the door, and left the apartment.
>
> Five minutes later, the police knocked on Gregory's door, and asked if she saw two males run into the apartment building.

- 3 -

Gregory said "no," and shut the door. Later that day, the police returned and took Gregory to the homicide unit for questioning. She repeated that she did not see anything. Six days after the murder, on April 26, [2011,] police again asked Gregory to come to the homicide unit for questioning. This time, she informed detectives that [Appellant] and Meatball, whom she identified both from photographs, ran into her apartment on the day of the murder. At trial, Gregory stated that she originally lied to police because she was nervous and scared.

PCRA Ct. Op., 10/17/16, at 6-7.

Following Gregory's direct examination, Appellant's counsel requested a sidebar and asked that the Commonwealth turn over any notes taken by the detectives at their interview of Gregory. The Commonwealth responded that there were no notes, and Appellant's counsel began cross-examining Gregory. Gregory testified that she saw one of the detectives write something down but did not see what he wrote. Appellant's counsel did not renew his request for notes. Appellant's counsel impeached Gregory on her inconsistent statements to the police and emphasized that she lied twice. *See, e.g.*, N.T. Trial, 3/21/13, at 57, 59, 64.

At trial, the court conducted a colloquy of Appellant. The court reminded Appellant that he was under oath and asked him whether he wanted to present any witnesses "other than character witnesses [and] the detective from the lineup?". N.T., 3/21/13, at 81. Appellant responded that he did not want to call any other witnesses:

The court: So in other words, there's no witnesses that [your counsel is] not going to call that you wanted him to call. Is that correct?

[Appellant]: Yes.

- 4 -

N.T., 3/21/13, at 82.

The court then questioned Appellant extensively about his right to testify:

> The court: Okay. So the last decision and the most important decision, I think, or one of the more important decisions you have to make is whether or not you are going to testify. And it's my understanding that you and [your counsel] have had an opportunity to discuss that. Is that correct?
>
> [Appellant]: Yes.
>
> The court: Now, you understand that only you can make the decision as to whether or not you wish to testify in this case. Do you understand that?
>
> [Appellant]: Yes.
>
> The court: [Your counsel] can give you advice but he can't make the decision. Ultimately it's your decision. Do you understand that?
>
> [Appellant]: Yes.
>
> The court: And lastly, has anyone forced you to get you to give up your right to testify?
>
> [Appellant]: No, ma'am.
>
> The court: Has anyone promised you anything? Like, did [your counsel] say, oh, if you don't testify you're getting a not guilty?
>
> [Appellant]: No, ma'am.
>
> The court: Okay. And so no one has forced you, no one has promised you, no one has threatened you not to testify, have they?
>
> [Appellant]: No, ma'am.
>
> The court: So the bottom line is this. Are you doing it of your own free will?

[Appellant]: Yes.

The court: And are you satisfied that you have all the information that you need to make your decision?

[Appellant]: Yes.

N.T., 3/21/13, at 82-84.

The court instructed the jury regarding the June 15, 2011 arrest and the April 20, 2011 murder:

> You must keep the evidence of the two crimes separate during your deliberations except for one piece of information, and that is you may consider the evidence of the second crime charged, that is, the illegal guns that the defendant is accused of possessing on June fifteenth of 2011 during your deliberations as to the murder charge, if you see fit and only if you see fit, if you believe that it tends to prove that the defendant had access to similar weapons when the crime was committed, the alleged murder on April twentieth of 2011.

N.T., 3/21/13, at 200. Appellant's counsel did not object to this instruction.

On March 22, 2013, the jury found Appellant guilty of first-degree murder, conspiracy, possessing instruments of crime, recklessly endangering another person, carrying a firearm without a license, and resisting arrest.[1] The trial court sentenced Appellant to a life imprisonment without parole.

Following his unsuccessful direct appeal, Appellant filed a *pro se* PCRA petition on July 17, 2015, and then filed a *pro se* motion for leave to file an amended PCRA petition and an amended PCRA petition on August 13, 2015.[2]

_____

[1] 18 Pa.C.S. §§ 2502(a), 903, 907, 2705, 6106, and 5104, respectively.

[2] The PCRA court docketed the motion and amendment on September 14, 2015.

On April 28, 2016, Appellant filed another *pro se* motion for leave to file an amended PCRA petition.

On May 5, 2016, PCRA counsel entered his appearance. On July 26, 2016, PCRA counsel filed a **Turner**/**Finley** letter.[3] On August 25, 2016, the PCRA court issued a Pa.R.Crim.P. 907 notice of its intent to dismiss the PCRA petition. On September 7, 2016, Appellant filed a *pro se* response to the Rule 907 notice, asserting that the **Turner**/**Finley** letter was deficient for not raising and arguing various claims of trial counsel's ineffectiveness, which he then listed.

On September 29, 2016, PCRA counsel filed a supplemental **Turner**/**Finley** letter addressing the claims raised in Appellant's *pro se* response to the Rule 907 notice. Appellant did not file a supplemental response to the Rule 907 notice challenging the adequacy of the supplemental **Turner**/**Finley** letter. On October 3, 2016, the PCRA court dismissed Appellant's PCRA petition, and Appellant timely appealed on October 20, 2016.[4]

_____

[3] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

[4] Although the docket reflects entry of an order dismissing Appellant's PCRA petition on October 3, 2016, the record does not include the actual order. Appellant, however, filed a notice of appeal on October 20, 2016, stating that the appeal was from the October 3, 2016 order. The PCRA court, out of an abundance of caution, again dismissed the Appellant's petition on October 17, 2016, and stated Appellant had thirty days from October 17 to file his notice of appeal. Trial Ct. Op., 10/17/16, at 9 n.7. Appellant did not file a new notice of appeal, but, as the October 17, 2016 order was intended

*(Footnote Continued Next Page)*

Appellant raises the following eight issues, which we repeat verbatim from his brief:

1. Did the PCRA court violate Appellant's rights to effective PCRA counsel under Pa.R.Crim.P. 904(F)(2) when counsel failed to argue, amend, develop and preserve on initial collateral review petitioner's dire[c]t appellant counsel was ineffective under the 14th Amendment of the U.S. Constitution by failing to raise trial court violated petitioner's 6th and 14th Amendment of the U.S. Constitution when trial court committed abuse of discretion.

2. Did the PCRA court violate Appellant's rights to effective PCRA counsel under Pa.R.Crim.P. 904(F)(2) when counsel failed to argue trial counsel was ineffective under the 6th and 14th Amendment of the U.S. Constitution for failing to investigate, interview and subpoena credible defense witnesses to testify during petitioner's trial.

3. Did the PCRA court violate Appellant's rights to effective PCRA counsel under Pa.R.Crim.P. 904(F)(2) for failing to argue petitioner was denied his 6th and 14th Amendment of the U.S. Constitution when trial counsel failed to move to have eyewitness identification excluded was unreasonable and fell below the objective standard of reasonableness subjecting petitioner to be prejudiced and denied a fair trial.

4. Did the PCRA court violate Appellant's rights to effective PCRA counsel under Pa.R.Crim.P. 904(F)(2) for failing to argue petitioner was denied his 6th and 14th Amendment of the U.S. Constitution when trial counsel failed to challenge petitioner's June 15, 2011 arrest and the suppression of seized weapons.

5. Did the PCRA court violate appellant's rights to effective PCRA counsel under Pa.R.Crim.P. 904(F)(2) when counsel failed to argue petitioner was denied his 6th and 14th Amendment of the U.S. Constitution when trial counsel failed to challenge or object

_(Footnote Continued)_ ───────────────

merely to correct any error regarding the October 3, 2016 dismissal, we treat the Appellant's appeal from the October 3, 2016 dismissal as also being from the October 17, 2016 order. **See** Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the date thereof").

to the court's and/or government application to consolidate petitioner's June 15, 2011 and April 20, 2011, case(s) for trial.

6. Did the PCRA court violate Appellant's rights to effective PCRA counsel under Pa.R.Crim.P. 904(F)(2) when counsel failed to argue petitioner was denied his 6th and 14th Amendment of the U.S. Constitution when trial counsel elicited from government witness Shandell Gregory that she observed homicide detectives taking notes during her April 20, 2011 investigated interview and did not renew his ***Brady***[5] material request of the withheld notes, caused petitioner prejudice and denied him his due process rights that ***Brady*** protects.

7. Did the PCRA court violate Appellant's rights to effective PCRA counsel under Pa.R.Crim.P. 904(F)(2) for failing to argue petitioner was denied his 6th and 14th Amendment of the U.S. Constitution when trial counsel failed to investigate nine millimeter connection and weather temperature defense(s) for trial.

8. Did the PCRA court violate Appellant's rights to effective PCRA counsel under Pa.R.Crim.P. 904(F)(2) when counsel failed to argue petitioner was denied his 6th and 14th Amendment of the U.S. Constitution when trial counsel gave [erroneous] advi[c]e not to testify.

Appellant's Brief at 5-6.[6]

_____

[5] In ***Brady v. Maryland***, 373 U.S. 83 (1963), the United States Supreme Court held that a prosecutor's withholding of information or evidence that is favorable to a criminal defendant's case violates the defendant's due-process rights and that the prosecution has a duty to disclose such information or evidence. ***Id.*** at 86–89.

[6] The Commonwealth contends that Appellant waived his issues because they all relate to ineffectiveness of Appellant's **PCRA** counsel, and Appellant preserved only claims of his **trial counsel's** ineffectiveness in his response to the Rule 907 notice. We disagree. Appellant's response to the Rule 907 notice explicitly challenged the sufficiency of PCRA counsel's advocacy by contending that PCRA counsel's ***Turner/Finley*** letter was deficient for failing to raise and argue trial counsel's ineffectiveness. Appellant's Resp. to Order Notice of Intent to Dismiss, 9/7/16, at 1. Thus, Appellant has not waived his claims regarding PCRA counsel.

Our standard of review of a PCRA court's denial of a PCRA petition "is limited to examining whether the PCRA court's determination is supported by" the record evidence and free of legal error. ***Commonwealth v. Wilson***, 824 A.2d 331, 333 (Pa. Super.) (*en banc*), ***appeal denied***, 839 A.2d 352 (Pa. 2003).

All of Appellant's claims are based on ineffectiveness of counsel. We address such claims under a well-settled framework:

> Counsel is presumed to have been effective. To overcome this presumption, a PCRA petitioner must plead and prove that: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.

> If a petitioner fails to prove any of these three prongs, his claim fails.

***Commonwealth v. Grove***, ___ A.3d ___, ___, 2017 WL 3763408, *7 (Pa. Super. 2017) (quotation marks, brackets, and citations omitted).

### Claims of PCRA Counsel's Ineffectiveness
### (Issue 1)

Throughout his brief, Appellant repeats multiple claims of ineffective assistance by his PCRA counsel due to a failure to raise arguments that Appellant believes are meritorious. Appellant collects these claims under his first issue, and then addresses each of them individually in his remaining eight issues. Rather than discussing these issues twice, we defer our

discussion of each claim to the separate issue of Appellant that focuses on that claim.

In addition to these specific substantive claims, Appellant contends that PCRA counsel's supplemental ***Turner/Finley*** letter was inadequate because it failed to include some of Appellant's specific issues. ***See*** Appellant's Brief at 11-13. We note that Appellant failed to challenge the adequacy of the letter before the PCRA court and therefore arguably has waived this issue. ***See generally Commonwealth v. Pitts***, 981 A.2d 875, 879 n.3 (Pa. 2009). However, we acknowledge that Appellant may not have received the supplemental September 29, 2016 letter prior to the PCRA court's October 3, 2016 dismissal of his PCRA petition. We therefore do not find waiver.

Assuming that Appellant lacked an opportunity to challenge the adequacy of counsel's supplemental letter, he is still not entitled to relief. For the reasons set forth below with respect to the separate claims, Appellant has not established that if it were not for counsel's alleged errors, there would be a reasonable probability of a different outcome at his trial. ***See Grove***, 2017 WL 3763408 at *7.

**Failure to Interview Witnesses**
**(Issue 2)**

Appellant argues a layered claim of ineffectiveness regarding trial counsel's failure to subpoena and call Eric Wallace as a witness. Appellant's Brief at 17. According to Appellant, Wallace would have exculpated him by

identifying a since-deceased third party as the killer. *Id.*; *see* R.R. at 24a-26a (Wallace's police statement).

In the first *Turner*/*Finley* letter, PCRA counsel opined that trial counsel had a reasonable basis for not calling Wallace as a witness, because Wallace also identified Appellant as wearing "clothes matching the description of the shooters" (black hoodie and long pants) on the day of the shooting. *Turner*/*Finley* Letter, 7/26/16, at 2. Counsel also noted that during his trial, Appellant stated in response to questioning by the trial court that he did not want to call any other witnesses other than those called by his trial counsel. *Id.*; *see* N.T., 3/21/13, at 81-82.

The PCRA court agreed with PCRA counsel's assessment, construing Wallace's statement as inculpatory and emphasizing that Appellant stated under oath at trial that he did not wish for counsel to call any additional witnesses. After careful review, we agree with the PCRA court. Counsel had a reasonable strategic basis for not calling Wallace as a witness, given that his statement was potentially inculpatory. Furthermore, notwithstanding the allegedly exculpatory material within Wallace's statement, Appellant affirmatively agreed that he did not want to call any additional witnesses.

**Failure to Suppress Fogle's Photographic Identification**
**(Issue 3)**

Appellant asserts that trial counsel was ineffective by not moving to suppress Fogle's photo identification of him because it was the result of a tainted and suggestive process. Appellant's Brief at 24. In support,

Appellant appears to argue that the police improperly influenced Fogle to pick Appellant's photo from the array because Appellant and Fogle have known each other since childhood. *Id.*

PCRA counsel explained that this issue lacked merit because Fogle stated that he identified Appellant because he was the shooter, and not because of any prior relationship. *Turner*/*Finley* Letter, 7/26/16, at 2, *citing* N.T., 3/20/13, at 31-33. Further, even if the array was tainted, counsel explained that Fogle would have had an independent basis for recognizing Appellant: their prior relationship. *Id.* The PCRA court agreed with counsel's analysis. PCRA Ct. Op. at 6. We too agree that Appellant has not established that this issue has arguable merit. Even if the identification process was tainted, Fogle's in-court identification, based upon his longstanding familiarity with Appellant, would have sufficiently purged the process of any alleged taint. *See Commonwealth v. Small*, 741 A.2d 666, 679 (Pa. 1999).

### Failure to Challenge Appellant's June 15, 2011 Arrest and To Suppress the Firearms Seized as a Result of That Arrest (Issue 4)

Appellant next asserts that trial counsel was ineffective for not moving to suppress evidence of his June 15, 2011 arrest and the firearms seized in that arrest. He contends there were no exigent circumstances or probable cause for his arrest. Appellant also appears to argue that because he was on private property, the police had no basis to search or seize him.

Appellant's Brief at 31. He alleges that the police's conduct caused him to flee. *Id.* at 33.

PCRA counsel concluded that the police, after seeing Appellant discard two firearms in plain view, were justified in pursuing and arresting him. *Turner*/*Finley* Letter, 7/26/16, at 2. The PCRA court agreed, recounting that as the police approached Appellant, they "saw in plain view, from just fifteen to twenty feet, [Appellant] pull two firearms from his waistband and toss them over his head into a yard passageway of a home." PCRA Ct. Op. at 5. The court noted that one of the officers "immediately recognized the tossed objects as firearms and heard their metallic sound when they hit the concrete." *Id.* at 5-6. The police did not attempt to secure Appellant until he threw the weapons. Once they arrested him, they retrieved the firearms from the yard. *Id.* at 6. We agree with the PCRA court that, on these facts, there was probable cause for the arrest and no ground to suppress evidence of the arrest or the firearms. Appellant's contention that the arrest was invalid because he was on private property is frivolous; there is no evidence that Appellant had a reasonable expectation of privacy in the yard where he threw the guns. We thus agree with the PCRA court that this issue lacks merit.

### Consolidation
### (Issue 5)

Appellant contends that PCRA counsel was ineffective for not arguing that trial counsel was ineffective for not objecting to the Commonwealth's

motion for consolidation of the firearms charges with the rest of his case. Appellant's Brief at 14. He similarly contends trial counsel's advocacy was ineffective and that counsel was unprepared to oppose consolidation. *Id.* at 40. Appellant contends that because the two cases were consolidated, he was prejudiced and denied his right to a fair trial. *Id.* at 44.[7]

PCRA counsel opined that Appellant's issue lacked merit because trial counsel **did** object to consolidation. Further, PCRA counsel asserted that the Commonwealth was entitled to consolidation because Appellant's June 15, 2011 arrest established his access to firearms and a motive to flee. *Turner/Finley* Letter, 9/29/16, at 2. The PCRA court concluded that this issue lacked merit because trial counsel did object to the consolidation. PCRA Ct. Op. at 5.

We agree that Appellant is not entitled to relief. Appellant's contention that trial counsel did not raise this issue is belied by the record. *See* N.T., 2/19/13, at 7. In addition, PCRA counsel raised this issue and explained why it lacked merit. *Turner*/*Finley* Letter, 9/29/16, at 2. Because Appellant's trial counsel objected, PCRA counsel cannot be ineffective for failing to raise a meritless issue. *Grove*, 2017 WL 375408 at *7.

---

[7] Appellant also raises a derivative argument that trial counsel was ineffective for failing to object to jury instructions regarding his possession, in June 2011, of a firearm of the identical caliber as the one used to kill Yates in April 2011. Appellant's Brief at 44. This argument fails because we conclude that trial counsel was not ineffective in objecting to the consolidation of the charges that led to the jury instruction.

- 15 -

## *Brady* Request
## (Issue 6)

Appellant argues that PCRA counsel was ineffective for failing to argue that trial counsel was ineffective by not renewing his *Brady* request for notes from the police interview of Gregory. Appellant's Brief at 14. The PCRA court responded that Appellant failed to establish that such notes existed. PCRA Ct. Op. at 7. The court also pointed out that Appellant's trial counsel impeached Gregory with her inconsistent statements. *Id.* at 7-8. PCRA counsel addressed this issue and explained why it is meritless. *Turner*/*Finley* Letter, 9/29/16, at 2.

The Commonwealth has denied that any notes of the Gregory interview existed. Even if such notes did exist, Appellant has failed to establish that anything in the notes would be exculpatory. Under *Commonwealth v. Treiber*, 121 A.3d 435, 460-61 (Pa. 2015), one requirement to establish a *Brady* violation is a showing that "the evidence was either exculpatory or impeachment evidence favorable to" the party asserting the violation. In the absence of such a showing, this issue lacks merit.

## Failure To Raise Similar Firearms and Weather Report Issues
## (Issue 7)

According to Appellant, 85% of the shootings in his neighborhood involve use of nine-millimeter handguns. Appellant's Brief at 14; R.R. at 17. Appellant posits that trial counsel should have introduced evidence of these shootings so that the jury could decide whether his access to nine-millimeter

guns was atypical or unique. R.R. at 17-18. He contends that evidence that he was arrested with a similar nine-millimeter gun was prejudicial and violated his right to a fair trial. *Id.* at 18. He asserts that his counsel was ineffective for not making this argument.

Appellant also asserts that the weather on the day of the shooting was 65 degrees and more than 50% humidity, and therefore he was wearing a t-shirt that day. R.R. at 18a. Appellant contends that this fact supports his assertion that he was not wearing a dark hoodie that day. *See id.* Again, Appellant asserts that his counsel was ineffective for not making this argument.

The PCRA court concluded that evidence of similar shootings involving a nine-millimeter gun was irrelevant under Pa.R.E. 403. PCRA Ct. Op. at 8. Furthermore, the weather did not prevent people from wearing hoodies. *Id.* Appellant, the court notes, could have worn a hoodie "in spite of the weather" to conceal his identity. *Id.*

PCRA counsel addressed both of these issues in his *Turner*/*Finley* letter and explained why they lacked merit. *Turner*/*Finley* Letter, 9/29/16, at 2 (opining that evidence of other firearm crimes in the area was either not relevant or, even if relevant, lacked probative value; and that Appellant cannot show that his case would have had a different outcome had the weather report been introduced). We similarly conclude that even if PCRA counsel erred in his advocacy of these claims, Appellant has not established

a reasonable probability of a different outcome, particularly given the other inculpatory evidence set forth above. **See Grove**, 2017 WL 3763408 at *7.

## Right to Testify
## (Issue 8)

Appellant asserts that trial counsel was ineffective because he advised him to not testify. He claims that counsel erred by informing him that his prior criminal record could be used to impeach his credibility. Appellant's Brief at 65. Appellant contends that because he was acquitted in his prior criminal cases, counsel's advice was erroneous. He similarly maintains that PCRA counsel was ineffective for failing to adequately investigate and argue this claim of trial counsel's ineffectiveness.

PCRA counsel opined that this issue was meritless because Appellant was questioned extensively by the court at trial about whether he wanted to testify, and Appellant clearly stated that he did not wish to do so. **Turner**/**Finley** Letter, 9/29/16, at 2. The PCRA court agreed. PCRA Ct. Op. at 9.

> This Court has explained:
>
> The decision of whether or not to testify on one's own behalf is ultimately to be made by the defendant after full consultation with counsel. In order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf.

**Commonwealth v. Michaud**, 70 A.3d 862, 869 (Pa. Super. 2013) (citation omitted). "[W]here a defendant voluntarily waives his right to testify after a

colloquy, he generally cannot argue that trial counsel was ineffective in failing to call him to the stand." ***Commonwealth v. Rigg***, 84 A.3d 1080, 1086 (Pa. Super. 2014) (citation omitted).

Here, we agree with PCRA counsel and the PCRA court that Appellant failed to demonstrate a basis for finding that PCRA or trial counsel was ineffective relative to Appellant's decision not to testify. Accordingly, this eighth and final issue lacks merit.

In sum, upon careful review of the parties' briefs, the record, and pertinent legal authority, we affirm the order of the PCRA court dismissing Appellant's petition seeking PCRA relief.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/2/2017